UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

CASE NO.:  1:CR-01-039

UNITED STATES OF AMERICA,

          Plaintiff,

vs.

HARRY SABOWITZ,

          Defendant.

_____/

## **DEFENDANT'S SENTENCING MEMORANDUM**

COMES NOW, the Defendant, HARRY SABOWITZ, (hereinafter "Harry"), through counsel, and respectfully moves this Honorable Court to impose a term of house arrest not to exceed twelve (12) months followed by probation not to exceed (12) months followed by supervised release at his sentencing scheduled for December 27, 2007.  A sentence at that level is warranted based upon Harry's assistance to the Government, his voluntary surrender, the length of time until his first crime, prison time is more significant for a first offender so a below the guideline sentence is more just, imprisonment is inappropriate for a first offender if the crime is not violent or serious, the Defendant's otherwise good character, he behaved exceedingly well while under pretrial services supervision, short sentences are adequate in white collar cases for general deterrence, the Defendant's crime constituted aberrant behavior, too long a sentence would impair rehabilitation or treatment, the Defendant is older and presents a low risk of recidivism, the Defendant is very unlike to re-offend and poses no danger to the public, the Defendant is elderly, he has a good employment history, he has strong family support

that aids rehabilitation, cooperation of Harry on Court's own motion where the Government does not make a section 5K1.1 motion, needed medical care, Harry is so sick or infirm that home confinement is equally efficient and less costly than prison, he has extraordinary physical impairments or bad health and incarceration would jeopardize his life or health because the Bureau of Prisons may not be able to provide adequate care, the good in Harry's life must be weighted with and can mitigate the bad, mercy warrants a below guidelines sentence, *sua sponte* departure by the Court, and the judge's own sense of what is fair and just.

<u>FACTS OF CASE AND HARRY'S ROLE</u>

Between December 1993 through March 1998 Harry purchased vehicles with high mileage readings from wholesale used car dealerships and rental companies and caused the odometers of those vehicles to be rolled back to reflect mileage readings that were lower than the vehicles actual odometer readings. The vehicles were then sold in Pennsylvania at the Manheim or Harrisburg Auto Auctions. Specifically, Harry along with Co-Defendants, Alfred A. Mele and Abraham Zucker, purchased the late model, high mileage cars from Merchants Rent A Car and elsewhere. They then hired other individuals to carry out functions of driving the cars to other states, ordering the titles, rolling back the odometers, flipping the titles through multiple owners, washing the titles, and selling the cars at Manheim Auto Auctions and elsewhere. Harry would then use the proceeds from the sales to purchase additional vehicles from Merchant's Rent A Car.

Harry moved to Jamaica and when he learned of the indictment in this matter, undersigned counsel arranged for his voluntary surrender.

On July 26, 2007, Harry pled guilty to Count II pursuant to a written plea

agreement whereby the Government would recommend a three level reduction for acceptance of responsibility and agreed that the loss that was attributable to Harry was more than $200,000.00 but less than $350,000.00, that the offense involved more than (50) fifty victims or more than minimal planning.  He also agreed to cooperate and did in fact meet with the agents and provided assistance.

HARRY'S SUBSTANTIAL ASSITANCE TO THE GOVERNMENT

As is stated above, Harry and undersigned counsel met with the agents, was debriefed and provided all information known to him regarding the indictment.  It is not known at this time whether or not the prosecution will move for a 5K1.1 departure.

SENTENCING OPTIONS

As a result of the Supreme Court decision in United States v. Booker, 125 S.Ct.738 (2005), the Sentencing Guidelines are now "effectively advisory" in all cases. Id. at 757.  The result is that a District Court must now "consider Guideline ranges," but may "tailor the sentencing in light of other statutory concerns as well." Id. at 757.  Thus, under Booker, sentencing courts must treat the Guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. §3553a).  The basic mandate and overriding principle of §3553(a) requires a District Court to impose a sentence "*sufficient, but not greater than necessary*," to comply with the four purposes of sentencing set forth in §3553(a)(2):

      (a)      retribution ("to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense");

      (b)      deterrence ("to afford adequate deterrence to criminal conduct");

      (c)      incapacitation ("to protect the public from further crimes of the

defendant"); and,

 (d) rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner").

In determining what sentence is "sufficient, but not greater than necessary" to comply with the §3553(a)(2) purposes of sentencing, the sentencing court is further directed to consider the following factors:

 (1) "The nature and circumstances of the offense and the history and characteristics of the defendant";

 (2) "The kinds of sentences available";

 (3) "The Guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range;

 (4) The need to avoid unwarranted sentencing disparity among defendants who have been found guilt of similar conduct; and,

 (5) The need to provide restitution where applicable. 18 U.S.C. §3553(a)(1), (a)(3)-(7).

Neither the statute itself nor <u>Booker</u> suggests that any one of these factors is to be given greater weight than any other factor. However, what is clear is that all of these factors are subservient to §3553(a)'s mandate to impose a sentence not greater than necessary to comply with the four purposes of sentencing. A sentencing court is further guided by 18 U.S.C. §3582, which provides that in determining whether and to what extent imprisonment is appropriate based on the §3553(a) factors, the judge is required to "recognize that imprisonment is ***not*** an appropriate means of promoting correction and

rehabilitation" (emphasis added).

In <u>Rita v. United States</u>, 127 S.Ct. 2456, (S.Ct. 2007) the Supreme Court held that courts of appeal may presume that a guideline sentence is reasonable, but stressed the presumption was "an **appellate** court presumption [that] applies only on appellate review".  By contrast, **"the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply**."  In <u>United States v. Sachsenmaier</u>, 491 F.3d 680 (7th Cir.2007) (post –Rita case) the court stated that the "District Courts must calculate the advisory sentencing guideline range accurately, so that they can derive whatever insight the guidelines have to offer, but ultimately they must sentence based on 18 U.S.C. § 3553(a) **without any thumb on the scale favoring a guideline sentence."**

In <u>United States v. Santoya</u>, 493 F.Supp.2d 1075 (E.D. Wisc.) the Court stated that under Rita "the sentencing judge is forbidden from indulging a presumption that the Guidelines sentence is the correct one."

<u>APPLICATION OF THE STATUTORY SENTENCING
FACTORS TO THE FACTS OF THIS CASE</u>

The Defendant, Harry Sabowitz, through undersigned counsel, urges this Court to consider the following factors when determining what sentence is "sufficient, but not greater than necessary", to satisfy the purposes of sentencing:

1.     The Sentencing Range Established By The Sentencing Commission

        Harry Sabowitz pled guilty to an Information charging Interstate Transportation of Fraudulent Securities.  The Presentence Investigation Report (PSIR) set the base offense level at 6 pursuant to U.S.S.G. §2F1.1.  Because the total loss amount is more than $200,000, but not more than $350,000, an eight-level increase was added

pursuant to U.S.S.G. § 2F1.1(b)(1)(I).  Because the offense involved more than minimal planning and a scheme to defraud more than one victim, a two-level increase was added pursuant to U.S.S.G. § 2F1.1(b)(2)(A) and (B).  By agreement between the prosecution and the defense two points were added resulting from an organizer or leader of a criminal activity that involved five or more participants pursuant to U.S.S.G. § 3B1.1(a).  Finally, two points were added for Obstruction of Justice pursuant to U.S.S.G. § 3C1.1.  Three points were subtracted as a result of Adjustment for Acceptance of Responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b), resulting in an advisory guideline imprisonment range of twenty-four to thirty months (PSIR at ¶54) when coupled with Harry's clean criminal history (Category 1).

2.    History and Characteristics of Harry Sabowitz and Other Statutory Sentencing Factors

    a.    Assistance to the Prosecution

        As previously mentioned, after Harry's plea, he met with the agents for a full debriefing.

    b.    Voluntary Surrender

        Again, as previously mentioned, undersigned counsel arranged for Harry to voluntary surrender, waive extradition and as a result, accompany FBI Agents to Philadelphia and then Harrisburg.  As described by the agents, Harry was a gentleman in all of their dealings during this surrender period.

    c.    Length of Time Until First Crime

        In United States v. Ward, 814 F.Supp. 23 (E.D. Va. 1993), the Court held that a departure was warranted because the guidelines failed to consider the length of time the defendant refrained from commission of his first crime, here until age 49.  In

Harry's case, this occurred in his mid fifty's.  In United States v. Collington, 461 F.3d 805(6th Cir. 2006) a drug and gun case calling for a guideline sentence of 188 to 235 months, a sentence of 120 months was affirmed in part because the criminal history did not reflect that "this incident was the first time that this quantity of drugs and guns had been found in Collington's possession." There is no question that this argument has renewed force in light of Booker.

       d.      Prison Time Is More Significant for A First Offender, So A Below Guideline Sentence Is More Just

     In United States v. Paul, 2007 WL 2384234 (9th Cir. 2007) (unpub.) where a guideline sentence of 16 months (high end) for taking government money was unreasonably high in part because Paul "a first time offender with absolutely no criminal record whatsoever".  In United States v. Baker, 445 F.3d 987 (7th Cir. 2006) a child porn distribution case, the Court affirmed a below guideline sentence of 78 months where the guidelines called for 108 months noting that "significant is the district court's finding that a prison term would mean more to Mr. Baker than to a defendant who previously had been imprisoned.  Consideration of this factor is consistent with §3553's directive that the sentence reflect the need for "just punishment," and "adequate deterrence."  In United States v. Willis, 479 F.Supp.2d 927 (E.D. Wis. 2007) a drug case calling for a guideline range of 120 months and a statutory max of 60 months, a sentence of one year and one day was sufficient in part because the sentence "provided a substantial punishment for someone like the defendant, who had never before been to jail and who engaged in no violence or dealing herself."  In United States v. McGee, 479 F.Supp.2d 910 (E.D. Wisc. 2007) a heroin distribution case involving a guideline range of 21 to 27 months and the

defendant received a mitigating role reduction and safety valve, the court held that a sentence of one year and one day was imposed because the guideline range in part because the defendant "had never before been to prison and generally a lesser period of imprisonment is required to deter a defendant not previously subject to a lengthy incarceration than is necessary to deter a defendant who has already served some serious time yet continues to reoffend."

       e.      Imprisonment is Inappropriate for First Offender if Crime is Not Violent or Serious

Congress in 28 U.S.C. § 994(j) stressed "the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense".  In United States v. Polito, 215 Fed. Appx. 354, 2007 WL 313463 (5th Cir. 2007) (unpub.) a child porn case involving guidelines of 27-33 months, the appellate court held that the district court's sentence of probation with one year house arrest was reasonable in part because it was a first offense.

       f.      Defendant's Otherwise Good Character

In United States v. Santoya, 493 F.Supp.2d 1075 (E.D. Wisc. 2007) involving a career offender and guidelines of 188-235 months, the court imposed a sentence of 138 months in part because the defendant "has significant positives in his character and background as evidenced by the letters from his family and fiancée which the guidelines did not take into account and because the judges "permitted to consider the entirety of the defendant's background and character, not just the negatives reflected in his criminal history".  In United States v. Wachowiak, 412 F. Supp.2d 958 (E.D. Wisc. 2006)

involving a child porn case with guidelines of 121-151 months, where the defendant was in treatment and low risk of recidivism, and strong support from his family, the court imposed a 70 month sentence in part because "the guidelines failed to consider the defendant's otherwise outstanding character, as depicted in the many supportive letters…while § 3553 (a)(1) requires the Court to consider the character of the defendant, the guidelines account only for criminal history.  In cases where the defendant led an otherwise praiseworthy life, the court should consider a sentence below the advisory range; See, e.g., United States v. Page, No. 04-CR-106, 2005 U.S. Dist. LEXIS 19152, at 12 (E.D. Wisc. 2005); United States v. Ranum, 353 F. Supp. 2d 984, 986 (E.D. Wisc. 2005)."

It is obvious from the letters written about Harry that the Court can surmise Harry's otherwise excellent character.

g.    Defendant Behaved Exceedingly Well While Under Pretrial Services Supervision

In United States v. Baker, 2007 WL 2693818 (6th Cir. 2007) where the defendant pled guilty to possession of an unregistered firearm arising from an altercation with his wife during which a gun accidentally discharged, calling for 27-33 months, the court held that a below guidelines sentence of probation with one year house arrest was proper in part because he behaved "exceedingly well" while under supervision of pretrial services.

In Harry's case, not only was he a gentleman during the time of his surrender but he obeyed all of the rules and regulations while under pretrial supervision.

i.    Short Sentences are Adequate in White Collar Cases for General Deterrence

In <u>United States v. Adelson</u>, 441 F.Supp.2d 506(SDNY 2006) a securities fraud case involving guidelines calling for life, the court imposed a 42 month sentence in part stating "there is considerable evidence that even relatively short sentences can have strong deterrent effect on prospective 'white collar' offenders."  The court cited Richard Frase, <u>Punishment Purposes</u>, 58 Standford L. Rev. 67,80 (2005); Elizabeth Szockyj, <u>Imprisoning White Collar Criminals</u>, 23 S. I11 U.L.J. 485, 492 (1998); United Sentencing Commission, <u>Fifteen Years of Guidelines Sentencing</u> 56 (2004) (noting that the Sentencing Guidelines were written, in part, to "ensure a short but definite period of confinement for a larger proportion of these 'white collar' cases, both to ensure proportionate punishment and to achieve deterrence".

j.    The Defendant's Crime Constituted Aberrant Behavior

In <u>United States v. Leyva-Franco</u>, 2006 WL 64422 (9th Cir. 2006) (unpub.) the appellate court held that the lower court did not abuse its discretion in a drug smuggling prosecution in granting a four-level downward departure for aberrant behavior, in light of evidence that this conduct was a single criminal occurrence that was committed without significant planning, was of limited duration, and represented marked deviation by the defendant from an otherwise law-abiding life.  In <u>United States v. LaVallee</u>, 439 F.3d 670 (10th Cir. 2006) where a prison guard was convicted of conspiracy to violate inmates rights by assault, the court held that a downward departure for aberrant behavior (and victim provocation) was proper where the inmate had made sexually explicit remarks to a female officer, and threatened the defendant.

In <u>United States v. Garcia</u>, 182 F.3d 1165 the Court held that the defendant's crime was "carefully planned" but did not preclude a finding of aberrant behavior

because the correct focus is not on the number of discrete acts undertaken by the defendant but rather on the aberrational character of his conduct.  In United States v. Jones, 158 F.3d 492, (10th Cir. 1998) where the defendant pled guilty to possession of a firearm by a prohibited person, the appellate court held that the district court did not abuse its discretion in departing downward by three levels to probation when, as one of eleven factors, it considered that the crime was aberrant conduct where the defendant had been law abiding until age 35 when his marriage disintegrated.  In United States v. Myers, 353 F.Supp.2d 1026 (S.D. Iowa 2005) where the defendant was 40 years of age with no record and lead a blameless life and was convicted of unlawful possession of a short-barreled shotgun he sold to his cousin four years earlier, and where the advisory guideline was 20-30 months, the court held a departure to time served and three months of supervised release was proper because of aberrant conduct and because other purposes of sentencing were satisfied.

Judging from the letters and the family support, this incident was definitely aberrant behavior on the part of Harry.

k.    Too Long a Sentence Would Impair Rehabilitation or Treatment

Undersigned counsel believes that this variance is strengthened in light of Booker. In United States v. Collington, 461 F.2d 805 (6th Cir. 2006) a drug and gun case calling for guidelines of 188-235 months, the court held that a sentence of 120 months was affirmed in part stating that "a 120 month sentence is sufficient enough to reflect the crimes committed while allowing for the possibility that Collington may reform and after his release from prison, when he is in his mid-thirties, may go on to a productive life in society."

Here, Harry is fifty-six years old and has certainly at this age, had enough time to reflect upon his crime and there is no question that he will go on to lead a productive life.

l.     The Defendant is Older and Presents A Low Risk of Recidivism

In United States v. Wadena, 470 F.3d 735 (8th Cir. 2006) involving a 67 year old defendant convicted of mail fraud with guidelines of 18 -24 months, the appellate court held that it was proper for the district court to impose a below guideline sentence of probation, in part, because "Wadena's age and recent deterioration in his health reduced the risk of re-offending."

Here, Harry is 56 years old and suffers from severe deterioration in his health and it is highly unlikely that he would ever have contact with the criminal justice system again.

In U.S. v. Luciana, 379 F.Supp.2d 288, 297 (E.D.N.Y. 2005) the court stated that post *Booker* courts have noted that recidivism is markedly lower for older defendants." In United States v. Carmona-Rodriguez, 2005 WL 840464, 4 (S.D.N.Y. April 11, 2005) (unpub.), this is a case where undersigned counsel was involved.  There, the 55 year old woman pled guilty to distribution of drugs receiving a sentence of 30 months which was below the guideline range and the court held that it was proper in part "in view of the low probability that Carmona-Rodriguez will recidivate.  Defendants "over the age of forty…exhibit markedly lower rates of recidivism in comparison to younger defendants. See *Measuring Recidivism: The Criminal History Computation Of The Federal Sentencing Guidelines*, at 12, 28 (2004)  www.ussc.gov/publication/Recidivism_General.pdf. "Recidivism rates decline relatively consistently as age increases," from 35.5% under age 21 to 9.5.% over 50.  In United States v. Carvajal, 2005 WL 476125

(S.D.N.Y. Feb. 22, 2005) (unpub.) a drug case with career offender guidelines of 262 months, the court held that this sentence was too great, that the client will be 48 when he emerges from prison, and that the goal of rehabilitation "cannot be served if a defendant can look forward to nothing beyond imprisonment. Hope is the necessary condition of mankind, for we are all created in the image of God. A judge should be hesitant before sentencing so severely that he destroys all hope and takes away all possibility of useful life. Punishment should not be more severe than necessary to satisfy the goals of imprisonment.

Finally, in United States v. Nellum, 2005 WL 300073 (N.D. Ind. Feb. 3, 2005) (unpub.) involving a 57 year old defendant convicted of distributing crack-cocaine with guidelines of 168-210 months, the court imposed a sentence of 108 months stating that because the court also had to consider the need to deter Nellum and others from committing further crime under § 3553(a)(2). Further, a guideline sentence would mean the defendant would be over the age of seventy at his release. The court's sentence will cause his release at 65 and "the likelihood of recidivism by a 65 year old is very low." The court also cited the United States Sentencing Commission Report released in May, 2004.

m.    The Defendant Is Very Unlikely To Reoffend And Poses No Danger To The Public

In United States v. Cherry, 487 F.3d 366 (6th Cir. 2007) involving a defendant convicted of possessing child pornography with a guideline range of 210-262 months, the court imposed a sentence of 120 months (which was a 43% variance from the guidelines) stating that it was proper in part because the defendant had "a low risk" of re-offending.

In United States v. Hein, 463 F.Supp.2d 940 (E.D. Wisc. 2006) involving a defendant convicted of being a felon in possession of ammunition, the court stated that the guideline term of 12-18 months is "greater than necessary to satisfy the purposes of sentencing" in part because "given his minimal prior record and law abiding life for the last ten years, coupled with his diminished physical capacity, and was very unlikely to re-offend and posed no danger to the public. Therefore, prison was not necessary.

Here, Harry has no prior contact with the criminal justice other than this case has led a law abiding life and is now suffering from diminished physical capacity.

n.    The Defendant Is Elderly

In United States v. Smith, 445 F.3d 1,5 (1st Cir. 2006) the appellate court held that the lower court's consideration at sentencing of the defendant's age was not inappropriate and noted that even though "a factor is discouraged or forbidden under the guidelines," that "does not automatically make the factor irrelevant when a court is weighing the statutory factors apart from the guidelines. In United States v. Gray, 454 F.3d 1323 (11th Cir. 2006) a porn distribution case, where the low end of the guidelines called for 151 months, the appellate court held that the district court's sentence of 72 months was reasonable because the court took into consideration the Section 3335(a) factors which include the "history and characteristics of defendant and that in this case the defendant's age, prior minimal record and his medical condition" made this sentence satisfactory. In this case the defendant was 64 years old. Further the court stated, that even under the advisory guidelines, "age may be a reason to impose a sentence below the applicable guideline range when the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient and less costly than

14

incarceration."  In <u>United States v. Hildebrand</u>, 152 F.3d 756 (8th Cir. 1998) a downward departure for a 70-year old from a range of 51-63 months to probation with 6 months in home confinement was proper where the defendant was a bookkeeper for a group of convicted mail frauds and had life threatening health conditions.

In <u>United States v. Dusenberry</u>, 9 F.3d 110 (6th Cir. 1993) a downward departure was granted due to the defendant's age and medical conditions where removal of both of his kidneys required dialysis three times a week.  In <u>United States v. Baron</u>, 914 F. Supp. 660, 662-665 (D. Mass. 1995) a bankruptcy fraud case, a downward departure was granted from a range of 27-33 months to probation and home detention where a 76 year old defendant with medical problems could me made worse by incarceration.  In <u>United States v. Roth</u>, 1995 WL 35676, at 1 (S.D.N.Y. Jan. 30, 1995) a 63 year old defendant with neuromuscular disease had "profound physical impairment" warranting downward departure.  Lastly, in *Correctional Health Care, Addressing the Needs of the Elderly, Chronically Ill, and Terminally Ill Inmates*, by the U.S. Department of Justice, National Institute of Corrections, 2004 edition, pp 9 and 10, it stated that management problems with elderly inmates are intensified in the prison and include vulnerability to abuse and predation, difficulty in establishing social relationships with younger inmates, need for special physical accommodations in a relatively inflexible physical environment.  The report also noted on page 10 that first time offenders are "easy prey for more experienced predatory inmates."  It should be noted that throughout the report, the elderly are defined by the various institutions as 50 or older.

Here, undersigned counsel believes that home confinement would certainly be equally efficient and cost less than incarceration.  Further, Harry is a few months away

from requiring dialysis and would just not do well in a prison setting.

      o.      Good Employment History

According to the PSIR although Harry does not read and write English (his native language is Yiddish), Harry has worked all of his life (PSIR ¶49 and ¶50).

In <u>United States v. Baker</u>, 445 F.3d 987,992 (7th Cir. 2006) a porn distribution case, calling for guidelines of 110 months, a 78 month sentence was affirmed by the court stating that the defendant's "lack of criminal history, his relatively young age, his religious background and his history of both employment and higher education…coincides with the sentencing factors specified in § 35539a) ["the nature and circumstances of the offense and history and characteristics of the defendant")] so a below guideline sentence was affirmed.

Undersigned counsel would be remiss if he did not mention that Harry is an extremely hardworking individual.

      p.      Strong Family Support That Aids Rehabilitation

In <u>United States v. Wachowiak</u>, 412 F.Supp.2d 958 (E.D.Wisc. 2006) a porn possession case, calling for guidelines of 120-151 months, the court held that a below guideline sentence of 70 months imposed in part was just because "the guidelines failed to account for the strong family support the defendant enjoyed, which would aid in his rehabilitation and reintegration into the community.  Because the defendant's family and friends have not shunned him despite learning of his crime, he will likely not feel compelled to remain secretive if tempted to re-offend.  Rather, he will seek help and support."

Your Honor has already met some of Mr. Sabowitz' family such as his brother

16

and his nephews in court and as is indicated in the PSIR, Harry is currently residing with his nephew in New York.  He has the required network to support him and aid his rehabilitation.

     q.     Cooperation Of The Defendant On Court's Own Motion Where Government Does Not Make §5K1.1 Motion

In <u>United States v. Fernandez</u>, 443 F.3d 19 (2nd Cir. 2006) the court stated "we agree that in formulating a reasonable sentence a sentencing judge must consider "the history and characteristics of the defendant"…and should take under advisement…the contention that a defendant made efforts to cooperate, even if those efforts did not yield a Government motion for downward departure."

To date, undersigned counsel is unaware as to whether or not the prosecution intends to file a 5K1.1 departure, but as is indicated previously, Harry was debriefed and cooperated with the authorities and the court can take that into consideration, post *Booker*, under the § 3553 factors.

     r.     Needed Medical Care

In <u>United States v. Carmona-Rodriguez</u>, 2005 WL 840464, 4 (S.D.N.Y., 4/11/2005) (unpub.), a case where undersigned counsel was involved, the 55 year old female with no priors pled guilty to distributing drugs, and the court sentenced her below the applicable guidelines in part because, post *Booker*, she needed medical care and that must be considered along with the guidelines.  The court also stated "it is also significant that the defendant is suffering from high blood pressure and that she has received psychiatric treatment for anxiety and depression since 1994.  See also <u>Nellum</u>, 2005 WL 3000073, at 4, stating that § 3553(a)(2) and *Booker* "require judges to impose sentences

that…effectively provide the defendant with needed medical care" quoting from *Booker*, 125 S.Ct. at 765.

It is obvious from the medical reports that will be discussed hereafter that Harry suffers from many physical problems and undersigned counsel in his thirty-five years of experience has never seen an inmate that needed medical care receive the proper medical care when he is incarcerated no matter what guarantees were made at sentencing by agents of BOP.

s.      Health Problems Make Imprisonment More Difficult

In United States v. Hein, F.Supp. 2d 940 (E.D. Wisc. 2006) involving a defendant convicted of being a felon in possession of ammunition, with guidelines of 12 to 18 months, the court stated "those guidelines are greater than necessary to satisfy the purposes of sentencing" in part because the "defendant is in extremely poor health, as evidenced by the medical and vocational records and his receipt of social security and a prison term for one in his condition would be extremely difficult and that the Bureau of Prisons would be strained in dealing with him".

t.      Defendant Is So Sick Or Infirmed That Home Confinement Is Equally Efficient And Less Costly Than Prison

In United States v. Wadena, 470 F.3d 735 (8th Cir. 2006) involving a 67 year old defendant convicted of mail fraud with guidelines of 18-24 months, the appellate court held that it was proper for the district court to impose a below guideline sentence of probation, in part because the client suffered from "chronic health conditions, including hypertension, hearing loss, and cataracts and Type II diabetes and kidney disease, which recently worsened to the point where he requires three-hour dialysis treatment three times

a week and "The 2005 Guidelines, which the district court applied in this case, state that courts may consider departing downward to a non-prison sentence for an "infirm" defendant because "home confinement might be equally efficient as and less costly than incarceration." U.S.S.G. § 5H1.1 (2005). The court further stated that the district court properly found that probation was "sufficient but not greater than necessary to impress upon Wadena the seriousness of the offense." The sentence promotes respect for the law, provides just punishment for the offense, and affords adequate deterrence as well as providing Wadena "with needed medical care" "the overarching policy contained in 5H1.1 is clear: in some situations, a district court may impose a non-prison sentence when a defendant has serious medical needs".

As is indicated in (PSIR ¶44 and ¶45) Harry suffers from anemia, anxiety disorder/depression, dyslipidemia, and decreased ambulatory function (right knee pain), chronic renal insufficiency which is progressive and which in the not distant future will require renal replacement therapy. The medical report by his treating physician indicates that "these various diagnoses and medical problems would make it difficult to manage his care in an incarcerated situation."

u.      The Defendant Has Extraordinary Physical Impairment Or Bad Health and Incarceration Would Jeopardize Life Or Health Because The BOP May Not Be Able To Provide Adequate Care

This variance is similar and closely connected to the prior three variances. In United States v. Pasquantino, 2007 WL 1149917, 12 (4th Cir. 2007) (unpub.) a wire fraud case, where defendant had several strokes, cerebrovascular disease, severe organic mental disorder and complete disability for work purposes; and a neurologist's affidavit

reporting that the defendant had suffered a transient ischemic attack in 2004, that his condition had grown worse since trial, and that he was at risk for a life-threatening stroke, and incarceration would "constitute a grave danger to his life" and therefore justified a substantial below guideline sentence of 18 months.  In United States v. Spigner, 416 F.3d 708, 712 (C.A. 8 2005) this was a case involving a defendant convicted of sales of more than fifty grams of crack, with a base offense level of 34, and where the defense agreed not to ask for a downward departure on the basis of health.  The case was remanded because the appellate court stated that the district court can still impose a sentence lower than the suggested because after *Booker* the new advisory sentencing scheme permits broader considerations of sentencing implications.  Moreover, section 3553(a) requires that a district court consider the need to provide medical care in the most effective manner when sentencing a defendant.  The court further stated that his condition demanded regular dialysis treatment and has been subject to surgeries for the insertions of two different catheters for dialysis.

Finally, in United States v. Martin, 363 F.3d 25, 50 (1st Cir. 2004) a tax fraud case, the court stated that a three level downward departure was proper (and possibly more on remand) where "several serious medical conditions make Martin's health exceptionally fragile and …we are not convinced that the BOP can adequately provide for Martin's medical needs during an extended prison term.  In United States v. Gee, 226 F.3d 885 (7th Cir. 2000) the appellate court held that a downward departure under § 5H1.4 based on health was not an abuse of discretion where the judged reviewed 500 pages of medical records and where the judge concluded that "imprisonment posed a substantial risk of the defendant's life, even though the BOP submitted a letter stating

that it could take care of any medical problem and that the letter "was merely a form letter trumpeting BOP capability." In <u>United States v. Hein</u>, 463 F.Supp.2d 940 (E.D. Wisc. 2006) the court held that a guideline term of 12-18 months is "greater than necessary to satisfy the purposes of sentencing" in part because "defendant was in extremely poor health, as evidenced by the medical and vocational records and his receipt of social security and the prison term for one in his condition would be extremely difficult and that the BOP would be strained dealing with him." In <u>United States v. Willis</u>, 322 F. Supp. 2d 76, (D.Mass 2004) the court granted a downward departure to a 69 year old from 27 months to probation with six months home confinement based on the inordinate number and potentially serious medical conditions, and that the defendant was at an age where such conditions would have invariably got worse in prison. Also, this was in response to the prosecution argument that the BOP could care for the defendant. The court stated "I have never had a case before me in which the BOP suggested that it did not have the capacity to care for the defendant."

     v.    The Good In The Defendant's Life Must Be Weighted With And Can Mitigate The Bad

In <u>United States v. Adelson</u>, 441 F.Supp.2d 506, a securities fraud case, calling for guidelines of a life sentence, the court imposed a 42 month sentence in part because of the defendant's past integrity and good deeds. The court stated "But, surely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance. This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and

systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, "the history and characteristics of the defendant."

Here the letters written about Harry indicate that he has a lot of goodness in him.

w.      Mercy Warrants A Below Guideline Sentence

Testimony of Justice Anthony Kennedy before the Senate Judiciary Committee on February 14, 2007, in response to Senator Whitehouse, stated "Our sentences are too long, our sentences are too severe, our sentences are too harsh…[and because there are so few pardons] there is no compassion in the system.  There's no mercy in the system."  In Justice Kennedy's ABA speech of 2003 he stated "A country which is secure in its institutions, confident in its laws should not be ashamed of the concept of mercy.  As the greatest of poets has said 'mercy is the mightiest in the mightiest.  It becomes the throned monarch better than his crown."   In James Q. Whitman's book, Harsh Justice Oxford Press 2003) Paperback Ed. At 223 n. 72 the author stated "the makers of sentencing guidelines succeeded only in contributing to the making of a law of punishment that shows obstinately little concern for the personhood of offenders…a law that tends to treat offenders as something closer to animals than humans, and that has correspondingly sought, more and more frequently, simply to lock them away."   He further stated "American punishment is comparatively harsh, comparatively degrading, comparatively slow to show mercy."

Here, Harry asks for mercy from this Court.

x.      Sua Sponte Departure By The Court

In United States v. Vizcaino, 202 F.2d 345, 348 (D.C. Cir. 2000) the court

implicitly recognized the authority of the district court to depart *sua sponte* but finding no plain error not to do so.  In <u>United States v. Ekhator</u>, 17 F.3d 53 (2d Cir. 1994) a case where the defendant agreed not to ask for downward departure, the court stated that it may do so *sua sponte* if there were unusual family circumstances;  In <u>United States v. Williams</u>, 65 F.3d 301, 309-310 (2d Cir. 1995) the court stated, "we wish to emphasize that the Sentencing Guidelines do not replace the traditional role of the district court in bringing compassion and common sense to the sentencing process…in areas where the Sentencing Commission has not spoken…district courts should not hesitate to use their discretion in devising sentences that provide individualized justice."

> y.      Judge's Own Sense Of What Is Fair And Just

In <u>United States v. Jones</u> 460 F.3d 191 (2nd Cir. 2006) where the defendant was convicted of a felon in possession and possession of a firearm, calling for guidelines of 36 months, the appellate court held that the district court properly imposed a non guideline sentence of 15 months when he considered his own sense of what was fair and just.  The court stated "Although the sentencing judge is obliged to consider all of the sentencing factors outlined in section 3553(a), the judge is not prohibited from including in that consideration the judge's own sense of what is a fair and just sentence under all the circumstances.  That is the historic role of sentencing judges, and it may continue to be exercised, subject to the reviewing court's ultimate authority to reject any sentence that exceeds the bounds of reasonableness."

<u>CONCLUSION</u>

There is never a good time to be sentenced.  For Harry, this is the worst of times. He has failing health and lives on social security.  He is remorseful and embarrassed by

23

this entire ordeal.

Notwithstanding Harry's current woes, the fact remains that Harry will be punished for his misdeeds and the questions remains, what is "sufficient, but not greater than necessary", to comply with the sentencing directives.  Judge Rambo, in answering that question, I implore you to be merciful when sentencing this good, decent, and very religious man.

                        Respectfully submitted,

            By: ___/s/ Jeffrey M. Voluck_____
                        Jeffrey M. Voluck, Esquire
                        Wachovia Tower-Suite 700
                        One East Broward Boulevard
                        Fort Lauderdale, Florida 33301
                        Telephone: (954) 467-8989
                        FLORIDA BAR NO.: 0113750
                        Email:  acquit00@bellsouth.net